SCANNED

UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Crim. No. 08-98-P-H |
| | ) |
| STEVEN P. AMATO | ) |

### Prosecution Version

If this case proceeded to trial, the Government would prove beyond a reasonable doubt the following:

### Count One – Health Care Fraud

1.  From January 1, 2000 to December 31, 2004, the defendant was a licensed Maine chiropractor who resided in the District of Maine. Throughout this period, the defendant treated patients at an office in Damariscotta, and for a shorter period, at an office in Yarmouth, Maine. The defendant also traveled to New York approximately two days per month to treat patients in New York City. The defendant advertised his practice in Damariscotta as the Center for Alternative Healing.

2.  During this period many of the defendant's patients had health insurance, either through a private health insurance plan such as Anthem, Aetna, Cigna, Mail Handlers and Harvard Pilgrim Health Care, through an auto insurance plan that included medical benefits such as Progressive, or through a public health care program such as Medicare. These plans were all health care benefit programs as defined in 18 U.S.C. § 24.

3.  Every health care benefit program had rules, contracts or regulations that set forth the covered services, the rates of reimbursement, and non-covered services. In general, health care benefit programs paid for specified health care services, subject to limitations, that were actually

performed and were medically necessary for the health of the patient, as defined by the programs' contract, rules or regulations.

4. The defendant billed health care benefit programs by submitting a standardized health insurance claim form. The claim form required the health care provider to identify the patient's name, the dates of service, the identity of the person providing the services, the condition or injury that was diagnosed, and the treatments or services provided. The claim form also required the provider to identify the diagnoses and the services or treatments using numeric codes. The service or treatment codes, commonly known as Current Procedural Terminology codes ("CPT codes") were set forth in the Current Procedural Terminology Manual, published by the American Medical Association.

5. The evidence would establish that the defendant submitted numerous claim forms to insurance companies that billed for services not rendered to patients on dates that patients actually received treatment from the defendant. These include claims that overbilled time-based codes. For example, CPT codes 97110 through 97150, are time-based codes that are billed in fifteen minute increments. According to the CPT Manual, these codes are used to bill for "therapeutic procedures through the application of clinical skills and/or services that attempt to improve function." For these codes to apply, the medical provider must have direct, one-on-one, patient contact during the procedure. In addition, CPT code 97550 is a time-based code described in the CPT manual as the code for "physical performance test or measurement."

6. Several former patients of the defendant would testify about the treatments they received from the defendant and the amount of time they spent in the treatment room with the defendant. For example, one patient would testify that her first two visits at the defendant's office lasted

forty-five minutes. Thereafter, her treatments lasted no more than twenty minutes. However, the evidence will show that the defendant often billed her insurance company for six time-based codes, either 97110 or 97550, per visit, in addition to other codes that indicated he also performed spinal adjustments, and range of motion tests. The patients' testimony and the claims submitted by the defendant, along with the paid claims data provided by the insurance companies, will prove that the defendant exaggerated the number of time-based units he actually performed.

7. In addition, the testimony of several patients will establish that the defendant submitted bills for services performed on dates when the patients did not visit the defendant's office or receive any treatments from the defendant.

8. The evidence would further show that several patients questioned the defendant concerning the amounts that he billed their insurance companies. He advised one patient to disregard or ignore statements mailed to the patient from the patient's insurance company, known as Explanation of Medical Benefits. He told another patient that he had to over bill insurance companies to make up for those patients who did not have insurance. When one patient questioned why her insurance companies continued to pay for her treatments, the defendant responded that he had a lot of experience with insurance companies and that he knew how to write up the claim form so that they would not question it.

9. Finally, a summary witness would testify that based upon the evidence described above, the defendant's scheme and artifice to defraud resulted in a total loss of more than $100,000 to the various health care benefit programs.

### Counts Two through Four – Tax Evasion

10. The evidence will further establish that the defendant attempted to evade and defeat a portion of his individual income taxes for the years 2001 through 2003 by filing joint income tax returns that substantially understated his taxable income and tax due and owing. He signed and filed these income tax returns under the penalties of perjury.

11. The evidence will establish that the defendant conducted most of his banking with respect to his chiropractic practice at the Bath Savings Bank which had a branch office near the defendant's office in Damariscotta. Many of the checks that the defendant received from claims billed to insurance companies were deposited into this account.

12. However, in approximately June of 2000, an account was opened at the Chase Manhattan Bank in New York with the defendant's sister as the primary name on the account and the defendant's name as the secondary name on the account. All monthly statements and Forms 1099-INT were mailed to the defendant's sister who lived in the New York City area.

13. The evidence will further establish that the defendant caused the deposit of a substantial amount of business receipts into this account. These deposits consisted primarily of checks from the defendant's patients for co-payments or supplement purchases, including numerous checks issued to the defendant by Maine patients. During the years 2000 to 2003, the defendant deposited, or caused the deposit of, more than $800,000 of business receipts into this account.

14. The return preparer who prepared the defendant's tax returns for the years 2001 to 2003 did so based upon information and records provided to him by the defendant. He would state that the defendant never informed him that he had a bank account at a New York City bank into which he deposited a substantial amount of business receipts.

15. The evidence further establishes that an IRS special agent with the assistance of a revenue

agent reconstructed the defendant's corrected taxable income and tax due and owing using the bank deposits method of proof for the years 2000 to 2003. According to the bank deposits analysis, the defendant's tax returns for these years omitted the following amounts of taxable income and taxes due:

|  | **2000** | **2001** | **2002** | **2003** |
|---|---|---|---|---|
| **Taxable Income Per return** | $136,453.00 | $257,056.00 | $261,481.00 | $146,906.00 |
| **Corrected Taxable Income** | $329,549.00 | $422,418.00 | $502,627.00 | $388,874.00 |
| **Unreported Taxable Income** | $193,096.00 | $165,362.00 | $241,146.00 | $241,968.00 |
| **Tax Per Return** | $52,821.00 | $91,973.00 | $89,123.00 | $46,138.00 |
| **Corrected Tax Due** | $122,859.00 | $159,500.00 | $186,879.00 | $130,492.00 |
| **Additional Tax Due and Owing** | $70,038.00 | $67,527.00 | $97,756.00 | $84,354.00 |

The total amount of taxes due and owing for the years 2000 through 2003 is approximately $319,675.

16. The evidence of willfulness includes the four-year pattern of understating income, the defendant's repeated deposits of Maine business receipts in an out-of-state bank account opened with his sister listed as the primary account holder, and the defendant's failure to provide his return preparer with complete information concerning his income during the years in question.

Dated in Portland, Maine, May 22, 2008.

Respectfully submitted,

Paula D. Silsby
United States Attorney

James W. Chapman, Jr.
Assistant United States Attorney