```
 1              UNITED STATES DISTRICT COURT

 2                  DISTRICT OF MAINE

 3    _____

 4    UNITED STATES OF AMERICA,        CRIMINAL ACTION

 5              Plaintiff        Docket No:  08-98-P-H

 6

 7         -versus-

 8

 9    STEVEN P. AMATO,

10              Defendant
      _____
11                Transcript of Proceedings

12

13    Pursuant to notice, the above-entitled matter came on
      for SENTENCING held before THE HONORABLE D. BROCK
14    HORNBY, United States District Court Judge, in the
      United States District Court, Edward T. Gignoux
15    Courthouse, 156 Federal Street, Portland, Maine on the
      22nd day of October, 2008 at 1:00 PM as follows:

16

17    Appearances:

18    For the Government: James Chapman, Esquire
                          Assistant United States Attorney
19
      For the Defendant:  Jay P. McCloskey, Esquire
20

21

22

23

24             Dennis R. Ford, RMR
               Official Court Reporter

25        (Prepared from manual stenography and
               computer aided transcription)
```

|           |    |                                                                      |
|-----------|----|----------------------------------------------------------------------|
| 12:59:51  | 1  | (OPEN COURT. DEFENDANT PRESENT)                                       |
| 01:03:19  | 2  | THE COURT:  Good afternoon.                                           |
| 01:03:20  | 3  | MR CHAPMAN:  Good afternoon.                                          |
| 01:03:22  | 4  | MR. MCCLOSKEY: Good afternoon, Your Honor.                            |
| 01:03:24  | 5  | THE COURT:  The matter on for hearing at this                        |
| 01:03:27  | 6  | time is criminal number 08-98, United States versus                  |
| 01:03:33  | 7  | Steven Amato.  The matter is on for sentencing.                      |
| 01:03:37  | 8  | Mr. Chapman, have all necessary victims been                         |
| 01:03:39  | 9  | notified?                                                             |
| 01:03:40  | 10 | MR CHAPMAN:  Yes, Your Honor.                                         |
| 01:03:40  | 11 | THE COURT:  Are there any here to be heard?                          |
| 01:03:42  | 12 | MR CHAPMAN:  I believe there is one here and                         |
| 01:03:45  | 13 | they are not interested in addressing the Court.                    |
| 01:03:47  | 14 | THE COURT:  Alright, I will ask them at the                          |
| 01:03:47  | 15 | appropriate time.  Thank you.  Mr. McCloskey, would you              |
| 01:03:50  | 16 | and Mr. Amato please stand.                                           |
| 01:03:52  | 17 | Mr. Amato, the purpose of the hearing this                           |
| 01:03:54  | 18 | afternoon is for me to sentence you, but before I do                 |
| 01:03:56  | 19 | that, I'm going to hear from the prosecutor, I'll hear               |
| 01:04:00  | 20 | from your lawyer, I'll hear from any victim who wishes               |
| 01:04:04  | 21 | to be heard, and I'll hear from you if you wish to                    |
| 01:04:07  | 22 | speak to me.                                                          |
| 01:04:08  | 23 | I'm going to start by asking some questions of you                   |
| 01:04:10  | 24 | and your lawyer because I need to be sure that you've                 |
| 01:04:13  | 25 | read and discussed with him the revised presentence                  |

01:04:17 1 report in this matter because it analyzes how the

01:04:20 2 advisory guidelines apply and may affect how I sentence

01:04:24 3 you.

01:04:25 4     And counsel, I should say that I have read your

01:04:29 5 sentencing memoranda, that's one from the Government

01:04:32 6 and two from the defendant, and Mr. McCloskey, let me

01:04:36 7 start with you, have you read and discussed with Mr.

01:04:39 8 Amato the revised presentence report?

01:04:41 9     MR. MCCLOSKEY: I have, Your Honor.

01:04:41 10     THE COURT:  Did you have enough time to do

01:04:43 11 that?

01:04:43 12     MR. MCCLOSKEY: I certainly did.

01:04:44 13     THE COURT:  Mr. Amato, have you used any drugs

01:04:46 14 or alcohol in the last 24 hours?

01:04:48 15     THE DEFENDANT:  No, sir.

01:04:48 16     THE COURT:  Are you currently taking any

01:04:50 17 medicines?

01:04:51 18     THE DEFENDANT:  No, sir.

01:04:51 19     THE COURT:  Have you read the revised

01:04:53 20 presentence report and discussed it with your lawyer?

01:04:56 21     THE DEFENDANT:  Yes, sir.

01:04:56 22     THE COURT:  Did you have enough time to do

01:04:58 23 that?

01:04:58 24     THE DEFENDANT:  Yes, sir.

01:04:59 25     THE COURT:  I met with your lawyer and the

01:05:01 1 prosecutor sometime ago to go over the revised

01:05:04 2 presentence report to determine what, if anything, was

01:05:08 3 in dispute.

01:05:09 4    As a result of that meeting, and as a result of

01:05:12 5 the legal memoranda that had been filed, it's my

01:05:16 6 understanding that the revised presentence report is no

01:05:20 7 longer disputed in anyway.

01:05:22 8    There is one narrow question as to whether one of

01:05:26 9 the victims can recover, by way of restitution, the

01:05:30 10 cost of investigation, but that otherwise, the revised

01:05:34 11 presentence report, with the changed numbers that have

01:05:39 12 been agreed to, is not in dispute and the only question

01:05:42 13 for me here today is where within the guideline range

01:05:45 14 to sentence you, or whether I should impose what the

01:05:48 15 lawyers call a variant sentence; is that your

01:05:51 16 understanding as well?

01:05:52 17         THE DEFENDANT:  Yes, Your Honor, it is.

01:05:53 18         THE COURT:  Alright, thank you.  You can be

01:05:54 19 seated.  I'll hear from the lawyers.  I'll hear from

01:05:57 20 the prosecutor first.  Mr. Chapman.

01:06:00 21         MR CHAPMAN:  Thank you, Your Honor.  Your

01:06:04 22 Honor, as you just stated, I did file a sentencing

01:06:09 23 memorandum in this case.  I'm not going to go over that

01:06:12 24 in great detail.  I just want to emphasize a few of the

01:06:15 25 things that I've pointed out in that memorandum.

01:06:17  1          The Government's recommendation in this case is

01:06:20  2     that the sentence of -- jail sentence of between 24 and

01:06:23  3     30 months is an appropriate sentence in this case.  It

01:06:26  4     takes into consideration the seriousness of the crimes

01:06:29  5     committed by the defendant.  It measures the harm of

01:06:33  6     the crimes.  It takes into consideration the fact that

01:06:35  7     more than one crime was committed by this defendant

01:06:38  8     that affected more than one type of victim.  It takes

01:06:42  9     into consideration the fact that he has no criminal

01:06:44  10    record, and that he agreed to plead early and avoid

01:06:50  11    trial.

01:06:50  12         As you know, the Sentencing Guidelines attempt to

01:06:53  13    fashion a sentence that will not result in disparate

01:06:56  14    sentences of similar defendants in different parts of

01:07:00  15    the country who commit the same or similar crimes.

01:07:04  16         In looking at the sentencing factors that the

01:07:05  17    Court must consider under Section 3553, it does state

01:07:08  18    in the sentencing memorandum a sentence of at least 24

01:07:11  19    months in this case is necessary to reflect the

01:07:14  20    seriousness of this case and to promote respect for the

01:07:17  21    law.

01:07:18  22         This defendant is a well-educated, highly trained

01:07:21  23    professional who used his skills and talents to treat

01:07:25  24    people for sure, but he also used them to commit

01:07:27  25    serious fraud upon the health care system in this

01:07:31  1  country, and he did so deliberately and intentionally

01:07:34  2  over a four to five-year period.

01:07:36  3  Now, this is not something that happened over a

01:07:38  4  relatively short period of time when he had a temporary

01:07:40  5  lapse of judgment.  He submitted false claim after

01:07:43  6  false claim to insurance companies that exaggerated the

01:07:47  7  amount of time he spent performing therapeutic

01:07:49  8  procedures on his patients, many times billing more

01:07:51  9  than 19 hours worth of such procedures if you added up

01:07:56  10  the number of units that he billed in a single day.

01:07:59  11  When one patient questioned the amount of money he

01:08:02  12  charged an insurance company as stated on that

01:08:04  13  patient's explanation of medical benefits, the

01:08:07  14  defendant told the patient don't even look at it, you

01:08:11  15  don't have to worry about that.  He told another

01:08:13  16  patient he figured out a way to bill insurance

01:08:16  17  companies so that other patients without insurance

01:08:18  18  could be treated without having to pay as much.

01:08:20  19  This conduct constituted fraud upon insurance

01:08:24  20  companies, in this case, and health care fraud, as the

01:08:27  21  Court is aware, is an increasing problem in this

01:08:29  22  country.  The sentence must reflect the fact that this

01:08:32  23  is a serious offense, a serious fraud, not merely some

01:08:36  24  technical billing issue.

01:08:37  25  The Court may not be aware, but I'm certainly

01:08:42  1    aware that there is a notion in the medical community

01:08:44  2    in this state that the US District Attorney's Office is

01:08:46  3    trying to criminalize the practice of medicine in

01:08:49  4    Maine, and that we are unfairly prosecuting doctors

01:08:53  5    because somehow we are criminalizing the practice of

01:08:55  6    medicine.

01:08:58  7         This is a fraud, Judge, a serious fraud.  It's not

01:09:02  8    a technical matter.  This defendant, as I said, many

01:09:06  9    many times, over a period of several years, submitted

01:09:09  10   false claims to insurance companies, so a serious

01:09:13  11   sentence would reinforce that notion on the public that

01:09:19  12   this is not a minor technical offense, it's a serious

01:09:22  13   crime.

01:09:23  14        The public and the medical profession in this

01:09:26  15   state need to know that they are going to be treated

01:09:28  16   just the same as anybody else who commits a $100,000

01:09:31  17   fraud against various victims.

01:09:33  18        Now, unlike most of the defendants who you

01:09:40  19   probably see and appear before you, this defendant has

01:09:41  20   received a good education.  He became a highly trained

01:09:45  21   and respected professional and he made a good living.

01:09:48  22   Unfortunately, he chose to supplement his income by

01:09:51  23   committing fraud upon insurance companies and then not

01:09:54  24   paying his fair share of taxes to the IRS.

01:09:59  25        So this defendant, and other medical

01:10:00  1   professionals, need to know they can't avoid a

01:10:03  2   substantial jail sentence when they get caught just

01:10:06  3   because throughout their careers, they have helped

01:10:08  4   people who are in pain.

01:10:09  5       The fact that this is a tax fraud case as well,

01:10:13  6   Your Honor, also calls for a substantial jail sentence.

01:10:18  7   As I stated in my sentencing memorandum, the Sentencing

01:10:23  8   Commission adopted a policy, which the Court should

01:10:25  9   consider, which states that the deterrence of others

01:10:27  10  should be this Court's primary consideration when

01:10:30  11  sentencing a tax defendant.

01:10:33  12      As you know, we can't prosecute or investigate

01:10:35  13  everybody who cheats on their taxes so when there is a

01:10:38  14  case that comes to court, that sentence must be severe

01:10:40  15  enough to promote respect for the tax laws and send a

01:10:44  16  message that it just doesn't pay to commit tax fraud.

01:10:49  17      When the defendant is a professional, such as Dr.

01:10:52  18  Amato, I would submit that it would be very

01:10:54  19  counterproductive to enforce some of the federal tax

01:10:57  20  laws in this country to give someone a substantial

01:11:00  21  sentencing departure because they are a professional or

01:11:03  22  because they are wealthy enough to write a check once

01:11:05  23  they get caught to pay restitution to the IRS.

01:11:09  24      Telling the public that you can avoid jail or a

01:11:12  25  lengthy jail term if you have enough money to pay your

01:11:14 1 own taxes after you've been caught would be the wrong

01:11:17 2 message.  The public already has a hard time believing

01:11:20 3 that the tax laws in this country are fair, fair to

01:11:23 4 all, and during this election, that seems to be the

01:11:26 5 major issue, whose tax policy will result in more fair

01:11:32 6 taxes for the middle class.

01:11:34 7 If this Court granted this defendant a substantial

01:11:39 8 departure from the 24 to 30-month jail range, I submit

01:11:44 9 it would send the wrong message to the public.  It

01:11:47 10 would send -- that message would be that you can avoid

01:11:51 11 a wealthy jail term -- a long jail term if you are

01:11:52 12 wealthy enough to write a big check, or likeable enough

01:11:58 13 to have many patients or friends write letters on your

01:12:01 14 behalf.

01:12:02 15 So, Your Honor, the 24 to 30-month jail range in

01:12:05 16 this case is necessary under the sentencing factors you

01:12:08 17 must consider to promote seriousness -- to reflect the

01:12:11 18 seriousness of the offense, promote respect for the law

01:12:13 19 and to deter others.  Thank you.

01:12:15 20 THE COURT:  Thank you, Mr. Chapman.  Mr.

01:12:17 21 McCloskey, for the defendant.

01:12:18 22 MR. MCCLOSKEY:  Yes, Your Honor.  May I

01:12:20 23 address the Court from here?

01:12:21 24 THE COURT:  Yes, as long as you pull the

01:12:22 25 microphone toward you so we can all hear you.

01:12:24  1      MR. MCCLOSKEY:  Your Honor, the defendant has

01:12:27  2  submitted an extensive sentencing memorandum --

01:12:29  3      THE COURT:  And let me interrupt you.  You

01:12:31  4  referred to a report by Mr. Beck.  I take it it was not

01:12:33  5  a separate report, it's what's included in the

01:12:35  6  sentencing memorandum.

01:12:36  7      MR. MCCLOSKEY:  That's correct, and it's not

01:12:39  8  my intention to repeat the arguments that we made to

01:12:42  9  the Court, however I'd like to emphasize a few points.

01:12:46  10      The defendant has admitted illegal conduct.  He

01:12:48  11  has acknowledged that he evaded his taxes and

01:12:53  12  overbilled insurance companies for his services.

01:12:55  13      As is evident from the respective sentencing

01:12:57  14  memorandums, the Government and the defendant have had

01:12:59  15  some dispute over the amount of the loss.  In fact, the

01:13:01  16  Government agreed to lower the loss calculation by

01:13:04  17  $10,000 after the presentence report, and after the

01:13:08  18  presentence conference, but beyond that, the defendant

01:13:10  19  has chosen not to contest the amount of the loss and

01:13:13  20  make restitution of a little over $100,000 to the

01:13:17  21  insurance companies.

01:13:19  22      The defendant has agreed that the fight with the

01:13:21  23  Government over the loss calculation would not change

01:13:23  24  the guideline, and he wanted the sentencing hearing to

01:13:28  25  focus on the appropriate sentence, and not on a dispute

01:13:30  1   over the loss.

01:13:31  2       Now, so what is the appropriate sentence here

01:13:34  3   today for Steve Amato given the offense conduct and

01:13:39  4   taking into consideration all the factors required by

01:13:41  5   Section 3553.  Now, we have made a recommendation to

01:13:44  6   the Court of one year and a day, plus six months home

01:13:47  7   confinement.  We believe this is a reasonable and

01:13:50  8   realistic recommendation, taking into account the

01:13:54  9   totality of the circumstances.  I would make the point

01:13:57  10  to the Court that this recommendation was not arrived

01:14:00  11  at lightly or easily.

01:14:02  12      We expected the Government to recommend a

01:14:04  13  guideline sentence.  That's what the Government always

01:14:06  14  recommends, unless there is a 5K issue at this stage;

01:14:10  15  on the other hand, defendants usually asks the Court

01:14:13  16  for probation, or just for a few months in jail hoping

01:14:15  17  the Court will split the difference between the

01:14:18  18  Government's recommendation and the low recommendation

01:14:20  19  of the defendant.  We have purposefully not done that.

01:14:24  20      After a great deal of discussion with the

01:14:25  21  defendant, and with his full participation and consent,

01:14:28  22  we decided to take a different approach; that is, to

01:14:32  23  recommend to the Court a sentence that we believe is

01:14:34  24  substantively reasonable, and one that is sufficient,

01:14:38  25  but not greater than necessary, to accomplish the goals

01:14:41  1   of Section 3553 and that's what the statute says, as

01:14:44  2   the Court well knows, a sentence that's sufficient but

01:14:48  3   not greater than necessary.

01:14:51  4       I think the fact that the defendant has agreed to

01:14:54  5   this recommendation of a significant jail sentence --

01:14:56  6   and I would dispute the Government's contention that

01:14:59  7   what we are asking for is a slap on the wrist -- is

01:15:02  8   strong evidence that he is acutely aware of the

01:15:07  9   seriousness of his conduct and his understanding that

01:15:09  10  the sentence must promote respect for the law, but also

01:15:13  11  shows that through corrective actions, he understands

01:15:15  12  he must be punished.  What we are recommending is a

01:15:17  13  significant incarceration sentence.

01:15:19  14      He has also done what he could to make amends by

01:15:24  15  paying his taxes long ago and by his willingness to

01:15:28  16  make restitution without a protracted argument about

01:15:30  17  the loss calculation, which we could have easily done.

01:15:33  18      I might add that the Government's suggestion that

01:15:35  19  the only reason that he paid his taxes was to stop the

01:15:38  20  interest from accruing is inaccurate.  That certainly

01:15:41  21  was one reason, but Mr. Amato has wanted to put this

01:15:44  22  matter behind him for many months, if not years.  He

01:15:47  23  fully appreciated long ago that there was no defense to

01:15:53  24  the tax evasion.  He paid the back taxes, interest and

01:15:57  25  penalties as soon as the Government provided that

information upon which he could pay it.

Our goal in making this recommendation, Judge, in terms of a sentence of a year and one day and some home confinement is to provide the Court with a reasonable and realistic recommendation that hopefully will be helpful to the Court in deciding the appropriate sentence, and not simply the standard defendant request for probation or for a very short sentence.

We have given this some thought. Mr. Amato has participated in that decision. He understands the seriousness of his offense and he has to be punished.

Now, we have provided the Court with extensive background information about the defendant, and I won't repeat that here now. We did make the point in our memorandum that we believe family background, with its tragic violence, contributed in some measure to his present problems.

We also believe our recommendation reflects a just punishment for the offense as required by 3553. It is not a slap on the wrist, as the Government suggests. We have made the point in our memorandum that the defendant's age and his offense -- given his age and his offense, he will never be able to practice chiropractic medicine again.

Now, the Government suggests he might be licensed

01:17:14  1   at sometime in the future.  I can assure the Court,

01:17:15  2   having represented doctors who are trying to obtain a

01:17:18  3   medical license after having conviction, that it's next

01:17:21  4   to impossible to get that license back under conditions

01:17:24  5   like these.  Especially given this defendant's age, it

01:17:26  6   would be at least five years before he could even think

01:17:29  7   of applying for a license, and quite frankly, it is

01:17:34  8   unlikely that he will even get one, and anyone who has

01:17:37  9   gone through that process would attest to that, I

01:17:40  10  suggest.  Once out of the practice for so long, it

01:17:44  11  would be difficult to get readmitted, in any event.  In

01:17:47  12  fact, Steve has given up any idea of returning to his

01:17:50  13  position as a chiropractor.

01:17:52  14       The loss of his career, although minimized by the

01:17:54  15  Government, is a significant punishment.  It means that

01:17:57  16  he will have to find another type of employment for

01:17:59  17  which he has no training at this point.  This career

01:18:05  18  loss means more to Steve than just income.  Much of his

01:18:07  19  self-worth was tied up in being able to help people

01:18:10  20  with their illnesses.

01:18:11  21       So I think it bears some reflection about what

01:18:14  22  that loss means to this defendant, and generally what

01:18:19  23  the loss of a medical license, or license to practice

01:18:22  24  law, means to somebody after they do the punishment.

01:18:26  25  It is not to be understated.  Having represented

01:18:30　1　doctors in that position, it is a terrible thing and it

01:18:34　2　lasts long after whatever sentence the Court would

01:18:38　3　impose here.

01:18:39　4　　　Your Honor, I can tell you this defendant's

01:18:44　5　self-torment for his conduct, his sense of failure and

01:18:47　6　his sense of inadequacy as a result of his conduct is

01:18:49　7　quite beyond anything I have seen in the many

01:18:52　8　sentencings that I have been involved in.  It is clear

01:18:54　9　that this self-punishment will last longer than any

01:18:59　10　sentence that the Court would impose.  It is something

01:19:02　11　that is quite unusual, Your Honor, and I represent that

01:19:06　12　to the Court having seen a lot of defendants being

01:19:08　13　sentenced.

01:19:13　14　　　He is self-tormented by his conduct, by what he's

01:19:15　15　done, by his guilt, sort of mixed in with his whole

01:19:21　16　personal background.  It is a tragedy beyond the normal

01:19:25　17　tragedy that we see with defendants in a white collar

01:19:29　18　position.

01:19:30　19　　　This defendant is a non-violent first offender,

01:19:33　20　and we suggest that the Court should consider that as a

01:19:35　21　significant factor when it decides how much prison time

01:19:38　22　is actually needed, and I think our memorandum made

01:19:42　23　that point in terms of the Sentencing Commission, and

01:19:44　24　Commissioner O'Neill actually talking about first

01:19:48　25　defendants.

01:19:48  1    As is frequently the case, the length of the

01:19:51  2  defendant's sentence will have a significant impact on

01:19:54  3  his wife.  We have explained that to the Court in our

01:19:56  4  memorandum, and we think it's an appropriate

01:19:58  5  consideration for the Court under the totality of the

01:20:00  6  circumstances consideration.

01:20:03  7    Thus considering all the factors in 3553,

01:20:05  8  including the advisory guidelines, which is only one

01:20:08  9  factor, we believe that the sentence of one year and a

01:20:12  10  day and six-months home confinement to his property is

01:20:15  11  sufficient, but not more than necessary to punish this

01:20:17  12  defendant and to accomplish the other purposes set out

01:20:20  13  in that statute.

01:20:21  14    With regard to home confinement, if the Court

01:20:24  15  does, in fact, impose some amount of home confinement,

01:20:29  16  we have determined that it can be enforced by a GPS

01:20:33  17  system, and is not dependent on a phone line and needs

01:20:37  18  only minimal power.  Mr. Beck can talk to the probation

01:20:41  19  people out there, talk to the probation people out

01:20:43  20  here.  It can be done by a GPS system in California.

01:20:47  21  In fact, I understand they have a GPS system even here

01:20:51  22  in Maine that works.

01:20:53  23    Your Honor, I would also like to address the fine

01:20:57  24  range that the Court will consider.  I've argued in our

01:21:01  25  memorandum that the low end of the range is

01:21:04  1  appropriate.  The Government tries to suggest that he

01:21:06  2  should be fined in the high end due to his good

01:21:11  3  investments.  Well, those legitimate investments are

01:21:14  4  not so good any longer, just like anybody else.  He has

01:21:17  5  a limited amount of income.  He has paid a heavy

01:21:20  6  monetary penalty in terms of paying the taxes back,

01:21:21  7  which he should, the penalties and interest, but he has

01:21:25  8  sustained a substantial penalty.

01:21:26  9      In addition, as was made known to the Court, his

01:21:30  10  future income is going to be limited.  It's unclear

01:21:33  11  what he will be able to do, but we think that given the

01:21:38  12  full set of circumstances, a fine at the high-end of

01:21:41  13  the range is not necessary.  He clearly is going to pay

01:21:44  14  back the insurance companies almost immediately after

01:21:47  15  his sentence here today, and so he's done what he could

01:21:54  16  to try to make monetary restitution to the people who

01:21:57  17  have been harmed.

01:21:58  18      Your Honor, we want to speak a little bit about

01:22:00  19  his placement in a jail facility.  We ask that the

01:22:05  20  Court recommend to the Bureau of Prisons that the

01:22:06  21  defendant serve any jail time in the federal satellite

01:22:11  22  camp in Sheridan, Oregon.

01:22:13  23      Now, the Government's memorandum suggests that the

01:22:15  24  defendant is well-educated and needs no additional

01:22:18  25  educational, vocational training.  Obviously, we

01:22:20    1    disagree.  The defendant is going to need some other

01:22:24    2    occupation, and we have been able to research this

01:22:27    3    facility and it has vocational training.  It has

01:22:29    4    mechanical services training.  It has other sorts of

01:22:32    5    training that he will be able to use to try to find

01:22:36    6    some other employment.

01:22:37    7        In fact, in this particular facility, you can

01:22:40    8    actually go and matriculate for a college degree, and

01:22:45    9    so we think that those are things that are an

01:22:48    10   appropriate recommendation from the Court and may

01:22:52    11   facilitate it.  We understand the Bureau of Prisons is

01:22:54    12   not required to follow the recommendations of the

01:22:56    13   Court, although we believe that they would try to do so

01:22:58    14   if it's appropriate and there is space available.

01:23:00    15       So we ask again that if the Court imposes a jail

01:23:03    16   sentence that it be done at the federal satellite camp

01:23:06    17   in Sheridan, Oregon.  If the Court needs any further

01:23:09    18   information about that facility, or the address or

01:23:11    19   anything else, we would be glad to provide that.

01:23:13    20       Finally, Your Honor, we ask the Court that the

01:23:18    21   defendant be allowed to self-report.  We ask that he be

01:23:22    22   able to report on January 2nd.  He still has a

01:23:26    23   significant amount of work to do on his property with

01:23:29    24   regard to drainage and with regard to clearing the

01:23:32    25   property before the next fire season to protect the

01:23:36   1   property from damage from the elements.

01:23:43   2         Your Honor, in the courtroom today is Mary Johnson

01:23:47   3   and Bill Coombs.  They were patients of the defendant.

01:23:51   4   They are not here to speak to the Court today, but they

01:23:53   5   have submitted letters.  Mary Johnson has submitted a

01:23:58   6   letter.  Bill Coombs and Mary Johnson are mentioned in

01:24:02   7   the information provided to the Court in our sentencing

01:24:05   8   memorandum, but they are here in support of the

01:24:07   9   defendant today.

01:24:08   10         There were others who wanted to be here, but

01:24:10   11   either because of work -- another woman who was going

01:24:12   12   to come from Vinalhaven wasn't able to come because of

01:24:15   13   the weather, evidently inability to get here because of

01:24:21   14   the boat schedule.  In any event, there are a number of

01:24:24   15   patients, as reflected in the memorandum, that are in

01:24:28   16   support of the defendant, even though they know fully

01:24:30   17   what he has done.

01:24:31   18         THE COURT:  And I have read all of those.  Go

01:24:37   19   ahead.

01:24:37   20         MR. MCCLOSKEY:  Thank you, Your Honor.

01:24:38   21         THE COURT:  Thank you, Mr. McCloskey.

01:24:41   22         MR. MCCLOSKEY:  Your Honor, I would just ask

01:24:43   23   for the opportunity for the defendant's wife to briefly

01:24:46   24   address the Court.

01:24:46   25         THE COURT:  Yes.  Please have her come through

01:24:49  1   the gate and up to the podium.  Please come right up to

01:24:57  2   the microphone, ma'am.

01:24:58  3          MS. AMATO:   Thank you, Your Honor.

01:24:58  4          THE COURT:  State your name for the record.

01:25:00  5          MS. AMATO:  Linda Amato.

01:25:01  6          THE COURT:  Go ahead, Ms. Amato.

01:25:03  7          MS. AMATO:   Like all of us here, Your Honor,

01:25:04  8   my husband defines himself by the American dream,

01:25:08  9   obtaining the summit of his career, his relationship,

01:25:10  10  his financial success and his faith in God.

01:25:14  11     On the surface, he has been a very hardworking

01:25:17  12  health care provider, managing every aspect of his

01:25:21  13  practice by himself, having only one employee in the

01:25:23  14  last 13 years to keep his overhead down, but to

01:25:24  15  understand my husband, you have to understand and know

01:25:28  16  his history.

01:25:28  17     Steven was the product of a violent and unstable

01:25:32  18  upbringing.  It was a household where violence and

01:25:34  19  intimidation was employed, rather than caring and

01:25:36  20  nurturing.  He struggles everyday with loss, continued

01:25:41  21  loss in his life, whether that be losing me, his

01:25:44  22  friends, his family, his career or his hard-earned

01:25:48  23  savings.  He fears losing everything in his life that

01:25:52  24  he has devoted himself to, having already lost so much

01:25:57  25  in 1986 with the murder/suicide of his parents.

What has kept him going all these years, Your Honor, has been relieving the pain in others through his talent as a chiropractor and his love for educating the community on getting healthy and staying that way.

Your Honor, I have loved this man for 20 years. It causes me great pain to think the public, including his patients, would ever think that he has conspired a devious plot based on greed to defraud them. I've sat alone thousands of nights while he attended to the needs of his patient seeking his care with his full-steam ahead work ethic.

His wealth was accumulated by devoting long hours to the care of his business, patients, sacrificing his own personal life at the expense of our relationship and our desire to have a family of our own. The last four years of this process has the additional and considerable strain on our marriage of 16 years.

We still share the same heartbeat and share each breath. My husband and I look forward to getting to the other side of this matter so that we can continue to honor our marriage vows, picking up the pieces and moving forward with our life together along with the support of our friends and family in my home state of California.

Your Honor, my husband regrets the mistakes he has

01:27:11　1　made with his business and wants to help people again,

01:27:13　2　include children of homes of domestic violence. We

01:27:17　3　made the move to California for me, and we have taken

01:27:20　4　on a very difficult, rural and dangerous part of the

01:27:23　5　state. I feel blessed to have a husband who has taken

01:27:26　6　such good care of me over 20 years, and we love each

01:27:28　7　other from the depths of our heart. I need him with me

01:27:32　8　at home.

01:27:32　9　　　　So I ask you, sir, when you decide our fate, to

01:27:36　10　please be as lenient and merciful as the law allows you

01:27:39　11　to be. Thank you very much.

01:27:40　12　　　　　　　THE COURT: Thank you Ms. Amato.

01:27:46　13　　　　　　　MR. MCCLOSKEY: Thank you, Your Honor. If you

01:27:47　14　would like to hear from the defendant now.

01:27:49　15　　　　　　　THE COURT: Alright. First of all, is there

01:27:49　16　any victim in the courtroom who would like to be heard?

01:27:54　17　I see no one.

01:27:55　18　　　　　　　MR CHAPMAN: No, Your Honor.

01:27:56　19　　　　　　　THE COURT: Mr. Amato, as the defendant before

01:27:58　20　me for sentencing, you do have the right to speak to me

01:28:00　21　yourself. You can tell me anything you want me to

01:28:02　22　know, and especially anything that might lead me to be

01:28:05　23　lenient with you. I invite you to do that.

01:28:07　24　　　　You can just stand there and pull the microphone

01:28:09　25　toward you or come to the podium, whichever you prefer.

01:28:15  1    THE DEFENDANT:  Judge Hornby, I would like to

01:28:18  2 offer this statement to the Court in an effort to put

01:28:21  3 into context my thoughts and feelings as they relate to

01:28:23  4 the charges that I pleaded guilty to.

01:28:26  5    I understand from my lawyer you've had an

01:28:29  6 opportunity to review thoroughly the various memoranda

01:28:33  7 prepared from the defense and I thank you for that.  It

01:28:37  8 is in this vein that I present the following material

01:28:39  9 in the hope that it might provide further insight into

01:28:42  10 the sensitive details that led me to the uncomfortable

01:28:45  11 and difficult position that I found myself in today.

01:28:49  12    From the moment I discovered the dead bodies of my

01:28:51  13 mother and father, victims of a violent death, I knew

01:28:55  14 that I would be spending the rest of my life running

01:28:57  15 from the memories that define me.  The loss of my

01:29:01  16 childhood innocence, the loss of my parents and the

01:29:03  17 loss of my profession have been a torment too difficult

01:29:06  18 for me to bear.

01:29:07  19    I continue to grieve these losses every waking

01:29:11  20 hour of my life, but I want to express to the Court, to

01:29:14  21 my patients, to the insurance companies, and above all,

01:29:17  22 to my beloved wife Linda the sorrow that I feel in

01:29:21  23 having committed these errors in judgement.

01:29:25  24    While I cannot undo my conduct, I also cannot undo

01:29:28  25 the history that contributed to the reasons I find

01:29:31 1 myself here today. I have done what I could to make

01:29:33 2 things right. I have paid the back taxes and

01:29:36 3 penalties, and I intend to pay my restitution to the

01:29:38 4 insurance companies.

01:29:40 5 Your Honor, I was truly passionate about my work

01:29:43 6 as a chiropractor and I derived immense reward at the

01:29:47 7 fact that I was able to provide comfort to my patients

01:29:49 8 and add quality to their lives. I will miss the

01:29:52 9 healing effects my work provided for me, especially

01:29:55 10 being able to see children brought back to healthy

01:29:57 11 vitality as a result of my treatment.

01:30:00 12 I can understand how some might feel confused and

01:30:04 13 even angry over my actions. I know that I'm an

01:30:10 14 exceptional healer with an innate and God-given ability

01:30:13 15 to deliver healing to the sick and infirmed, but now

01:30:16 16 I'm the one who's needing the healing as a result of my

01:30:19 17 own conduct.

01:30:20 18 Judge Hornby, I have admitted that I need to pay

01:30:24 19 my taxes and that I billed the insurance company more

01:30:26 20 than I was supposed to. Although the Government has

01:30:29 21 tried to convey to the Court the notion that I was a

01:30:36 22 bad doctor, or that I treated my patients in a way that

01:30:37 23 I should not have, I want to make clear that the health

01:30:40 24 of my patients was first and foremost my greatest

01:30:43 25 priority outside of my concern and love for my own wife

01:30:47  1    and family.

01:30:48  2         On that, I'll have to live with the pain and the

01:30:50  3    sadness of my conduct and its consequences.  I can only

01:30:55  4    now plan and try to recreate some semblance of a normal

01:31:00  5    life with my wife and family, and that's exactly what I

01:31:03  6    intend to do following the completion of my sentence.

01:31:04  7         I would like to express my sincere gratitude to

01:31:07  8    the patients with whom Bill -- Mr. Bill Beck spoke, and

01:31:11  9    the many others who wrote letters to the Court on my

01:31:14  10   behalf, and I especially wish to thank those who have

01:31:18  11   taken the time to appear in court today to offer their

01:31:22  12   support.

01:31:22  13        Finally, it is with a sense of deep humility that

01:31:26  14   I wish to convey my thanks to all of my patients for

01:31:28  15   the commitment and compassion they have shown toward me

01:31:31  16   not as the hero, but as a fellow human being.  I ask

01:31:36  17   for their forgiveness and I ask for their prayers as I

01:31:40  18   navigate along with Linda through this most difficult

01:31:42  19   time in my life.  Thank you, Your Honor.

01:31:43  20        THE COURT:  Thank you, Mr. Amato.  Anything

01:31:45  21   further, Mr. McCloskey?

01:31:46  22        MR. MCCLOSKEY:  Nothing further.

01:31:47  23        THE COURT:  Anything further, Mr. Chapman?

01:31:49  24        MR CHAPMAN:  Just briefly, Your Honor.  Your

01:31:52  25   Honor, I don't doubt what Mr. McCloskey and Dr. Amato

01:31:58  1    have told you about Dr. Amato's childhood and the

01:32:01  2    trauma he has suffered back in the '80s, but surely

01:32:07  3    Your Honor has seen more defendants with similar

01:32:10  4    upbringing, or even more extreme upbringing that

01:32:15  5    committed those crimes out of desperation as they

01:32:18  6    didn't have any other choice.  They didn't have any

01:32:20  7    other means to support themselves.

01:32:22  8         This defendant is much different, Your Honor.  He

01:32:24  9    is a well-educated professional, and he committed these

01:32:27  10   crimes years after the traumatic events of his

01:32:33  11   childhood, and I don't see any relationship between the

01:32:35  12   offenses committed and what he suffered through as a

01:32:37  13   child.

01:32:39  14        As far as the placement recommendation, I have no

01:32:43  15   objection to Mr. McCloskey's placement recommendation,

01:32:46  16   and the Government doesn't have any position as to

01:32:51  17   where in the fine range the Court should fine this

01:32:52  18   defendant.

01:32:52  19        THE COURT:  Thank you, Mr. Chapman.  I'm going

01:32:54  20   to take a ten-minute recess and I'll return to impose

01:32:57  21   sentence.  I would like to see the probation officer.

01:32:59  22        (RECESS CALLED)

01:44:49  23   I previously read the revised presentence report

01:44:54  24   and the materials that I described at the outset of the

01:44:59  25   hearing, and now that I've heard from the lawyers and

01:45:07 1   I've offered any victim an opportunity to be heard, I

01:45:11 2   heard from Ms. Amato and from Mr. Amato himself, I'll

01:45:16 3   now make my findings of fact and conclusions of law and

01:45:21 4   proceed to impose sentence.

01:45:22 5       I find the facts as set out in the revised

01:45:28 6   presentence report, except with respect to certain

01:45:31 7   dollar amounts that I will specify.

01:45:36 8       For Group 1, which is Count 1, the health care

01:45:39 9   fraud, the base offense level is 6 under guideline

01:45:44 10  2B1.1(a)(2).  The amount of loss is $100,441.14 by

01:45:52 11  stipulation, and therefore eight levels are added.  I

01:45:57 12  make no finding on whether two levels should be added

01:46:01 13  under guideline 3B1.3 for use of special skill because

01:46:06 14  it will not affect the guideline calculations.  The

01:46:12 15  adjusted offense level for Group 1, therefore, is

01:46:16 16  either 16 or 14.

01:46:18 17      Group 2 is Counts 2 through 4, the tax evasion

01:46:23 18  counts.  The intended tax loss there was $319,675.

01:46:34 19  Therefore, the base offense level, as well as the

01:46:36 20  adjusted offense level, is 16 under guideline

01:46:38 21  2T1.1(a)(1) and 2T4.1(j).

01:46:48 22      Under the multi-count adjustment from guideline

01:46:52 23  3D1.4, the combined adjusted offense level for both

01:46:56 24  groups is 20.  The defendant gets a three level

01:47:01 25  reduction for accepting responsibility, guideline

01:47:05 1 3E1.1. The total offense level, therefore, is 17.

01:47:12 2 Criminal history is Category I. The guideline range,

01:47:16 3 therefore, is 24 to 38 months.

01:47:20 4 He is not eligible for probation. Supervised

01:47:24 5 release must be two to three years. The guideline fine

01:47:29 6 range is $5,000 to $50,000. There is no basis for a

01:47:35 7 guideline departure. Restitution is appropriate in the

01:47:40 8 amount of $100,441.14.

01:47:47 9 I note that the Government has told me that one of

01:47:50 10 the victims requested reimbursement on its

01:47:55 11 investigation costs, but I conclude those are not

01:47:58 12 properly subject to restitutionary relief under the

01:48:03 13 statute, and therefore, the amount I've just specified

01:48:07 14 is the amount of restitution.

01:48:08 15 Those are the guideline findings. Counsel, are

01:48:10 16 there any errors or omissions, from the Government?

01:48:12 17 MR CHAPMAN: No, Your Honor. In fact, if I

01:48:15 18 didn't say so earlier, the Government does so move for

01:48:19 19 that third level of acceptance, which you've included.

01:48:21 20 THE COURT: Thank you. Any errors or

01:48:22 21 omissions?

01:48:23 22 MR. MCCLOSKEY: No, Judge.

01:48:36 23 THE COURT: Thank you. Mr. Amato, your

01:48:37 24 sentence and your behavior reflect what I often see in

01:48:48 25 the courtroom which is the complexity of humanity. You

01:48:57   1   obviously were an excellent health care provider, and

01:49:02   2   at the same time you were a crook.

01:49:05   3   You had a difficult childhood. Confronted your

01:49:11   4   parent's murder/suicide, tremendously disabilitating

01:49:16   5   things, and yet you had unusual opportunities,

01:49:18   6   educational and financial. So the question that I must

01:49:27   7   answer in terms of sentencing you as a Federal Judge is

01:49:32   8   how to reflect and balance the various criteria that

01:49:38   9   Congress and the Supreme Court have directed our

01:49:43   10   attention to.

01:49:46   11   I think it's important to start by saying that

01:49:50   12   you've had excellent advocacy on your behalf both from

01:49:54   13   your lawyers and from your consultant, and I think it's

01:49:59   14   also important to say that when a Judge imposes a

01:50:03   15   sentence, the Judge imposes a sentence that is a

01:50:09   16   penalty for the bad, the evil that you've done. It

01:50:14   17   does not cast judgment upon you as an entire person.

01:50:21   18   I am going to sentence you here within the

01:50:23   19   guideline range not because there is any presumptive

01:50:29   20   validity to it, but because when I take into account

01:50:34   21   the various factors here that I'm mandated to consider,

01:50:38   22   I believe it is appropriate, and let me explain why.

01:50:42   23   I'm supposed to consider the nature and

01:50:45   24   circumstances of the offenses here. Here there were

01:50:49   25   two separate crimes. You were not simply, as is often

01:50:55　1　the case, committing a fraud on others and then hiding

01:50:58　2　the income.  You were sheltering even other income in

01:51:03　3　terms of the tax fraud.  So two separate fraudulent

01:51:09　4　crimes.

01:51:10　5　　　　The history and characteristics of the defendant,

01:51:13　6　I've spoke of those briefly.  You've had some

01:51:16　7　difficult, very difficult circumstances to overcome,

01:51:22　8　and yet you also had unusual privileges.  The

01:51:25　9　seriousness of the offense and the need to promote

01:51:27　10　respect for the law and just punishment I want to group

01:51:31　11　together.

01:51:34　12　　　　White collar crime is a particularly difficult

01:51:39　13　subject to evaluate in our culture and community

01:51:42　14　because on the one hand, it is true that often times

01:51:47　15　white collar criminals do not repeat their conduct, and

01:51:53　16　so there is less fear of what we sometimes call

01:51:58　17　recidivism.

01:52:00　18　　　　It's also the case that it's all too easy to have

01:52:04　19　a prejudice that sees white collar crime as more

01:52:10　20　benign, as less significant, and I think we all know in

01:52:18　21　today's world how serious it is that the integrity of

01:52:23　22　our professionals and people in positions that deal

01:52:26　23　with money, insurance companies, patients, et cetera,

01:52:31　24　be above reproach.

01:52:33　25　　　　I'm not worried about deterring you.  I'm sure

01:52:37  1   that you will not return to this kind of conduct, but I

01:52:42  2   do worry about the message that I send out to the

01:52:46  3   community that it is understood that this is serious

01:52:53  4   conduct, and I'm not worried about protecting the

01:52:57  5   public from you at this point because, as I say, I'm

01:52:58  6   sure you've learned your lesson.  It will not occur

01:53:02  7   again.

01:53:03  8       Educational and vocational training is not

01:53:07  9   material here, except to the extent of what your

01:53:08  10  lawyers requested for designation, and I will grant

01:53:10  11  that.  But finally on the list -- not quite finally,

01:53:14  12  I'll mention restitution first.  You are paying

01:53:16  13  restitution and that's good, but the need to avoid

01:53:19  14  unwarranted disparity among defendants is very

01:53:22  15  important here in terms of insuring that there is fair

01:53:26  16  and equal treatment around the country.

01:53:32  17      Were it not for the arguments that had been made

01:53:37  18  here, and the reflections of your upbringing and

01:53:42  19  challenges and the good that you've done, I would be

01:53:44  20  looking at a sentence at the top of the range, if not

01:53:50  21  beyond, but taking into account those factors as well,

01:53:56  22  and the parsimony principle that your lawyer's referred

01:53:59  23  to, a sentence that's sufficient but not greater than

01:54:01  24  necessary, and realizing that there are other penalties

01:54:06  25  that flow with it like the loss of license, I conclude

01:54:09  1  that 24 months is, in fact, the appropriate sentence.

01:54:15  2  I will recommend you for Sheridan, Oregon. As

01:54:19  3  your lawyer has pointed out, it's up to the Bureau of

01:54:22  4  Prisons, but I'll make the recommendation, and I'll

01:54:27  5  also permit you the date that you request, which is to

01:54:33  6  say January 2. When I get to that stage of the

01:54:39  7  announcement of the sentence, I'll have further

01:54:41  8  questions for you to insure you are willing to do what

01:54:45  9  that entails.

01:54:47  10  At this time, the defendant will stand for

01:54:48  11  sentencing. The defendant is hereby committed to the

01:54:54  12  custody of the United States Bureau of Prisons to be

01:54:56  13  imprisoned for a total term of 24 months on each of

01:54:59  14  Counts 1 through 4 to be served concurrently.

01:55:04  15  Upon his release from prison, he shall be on

01:55:06  16  supervised release for a term of three years on each

01:55:09  17  count to be served concurrently. He shall report to

01:55:13  18  the probation office in the district to which he is

01:55:15  19  released within 72 hours of his release. He shall not

01:55:20  20  commit another federal, state or local crime. He shall

01:55:24  21  not illegally possess a controlled substance. He shall

01:55:29  22  cooperate in the collection of DNA as directed by the

01:55:33  23  probation officer.

01:55:35  24  I suspend the mandatory drug testing condition

01:55:39  25  because I find that he poses a low risk of substance

abuse.  He shall not possess a firearm.  It is a condition of supervised release that he pay any fine or restitution that remains unpaid at the beginning of supervised release in accordance with the schedule I will set forth.  He shall comply with the standard conditions adopted by this Court, and the following additional conditions.  These special conditions apply as long as he has any outstanding financial obligations.

1:  He shall provide the supervising officer with any requested financial information.

2:  He shall report to the supervising officer any financial gains, including income tax refunds, lottery winnings, inheritances and judgments, expected or unexpected.  He shall apply them to any outstanding court ordered financial obligations.

3:  He shall not incur new credit charges or open additional lines of credit without the supervising officer's advanced approval.

Criminal monetary penalties are the special assessment of $100 on each of the four counts for a total of $400.  I'm imposing a fine on each count of $2,500 for a total of $10,000.

Restitution on Count 1 in the amount of $100,441.14.  The interest requirement is waived. The

01:57:17 1 defendant shall make restitution to the following

01:57:20 2 payees in the amounts I will list. If he makes a

01:57:25 3 partial payment, each payee shall receive an

01:57:29 4 approximately proportional payment.

01:57:32 5 Anthem, $71,315.66. Blue Cross Blue Shield

01:57:44 6 Delaware, $6,424.61. Aetna, $15,713.12. Signa,

01:57:55 7 $4,455.15. Progressive Northern, $725. Mail Handlers,

01:58:08 8 $313. Harvard Pilgrim, $1,213.80. Medicare, $280.80.

01:58:22 9 Payments shall be applied in the following order;

01:58:25 10 first the assessment, secondly restitution, third fine.

01:58:32 11 Payment of the total is due in full immediately. Any

01:58:36 12 amount he is unable to pay now is due and payable

01:58:40 13 during imprisonment. Upon release from prison, any

01:58:44 14 remaining balance shall be paid in monthly

01:58:48 15 installments. The amount shall be determined initially

01:58:50 16 by the supervising officer, but they are subject always

01:58:54 17 to review by the sentencing Judge on the request of

01:58:58 18 either the defendant or the Government.

01:59:01 19 Now, Mr. Amato, you have the right to appeal the

01:59:05 20 sentence that I just imposed. In order to do that, you

01:59:09 21 have to file with the Clerk of this Court, within ten

01:59:11 22 days from today, a written notice of appeal. If you

01:59:15 23 fail to do that, you will lose your right to appeal

01:59:18 24 your sentence.

01:59:20 25 If you want to appeal your sentence and cannot get

01:59:22 1 your lawyer to file that notice, you can ask for the

01:59:26 2 Clerk of Court to file the notice for you, and the

01:59:28 3 clerk will do it, but it has to be within the ten days.

01:59:32 4 If you like, you can ask right now out loud here in the

01:59:36 5 courtroom for the clerk to file that notice, and the

01:59:38 6 clerk will do it.

01:59:39 7 If you cannot afford to pay the cost of taking

01:59:41 8 appeal, you can ask permission to proceed without

01:59:44 9 paying costs, and if you qualify financially, you'll be

01:59:48 10 permitted to do that. Do you understand all that I've

01:59:51 11 just told you?

01:59:52 12 THE DEFENDANT: Yes.

01:59:53 13 THE COURT: Now, your lawyer has asked me, Mr.

01:59:56 14 Amato, to allow you to self-report. If I do that, what

02:00:01 15 will happen is this. I will designate the date and

02:00:04 16 time, that would be January 2 of '09 as you requested,

02:00:09 17 and the Bureau of Prisons will designate the

02:00:12 18 institution. I don't know whether it will be where I

02:00:15 19 recommend or somewhere else, but you'll be responsible

02:00:17 20 to turn up there, wherever it is, on time on that date

02:00:22 21 and in the meantime, you're required to comply with all

02:00:25 22 of the previous terms under which you've been on

02:00:28 23 supervised release.

02:00:30 24 If you should fail to turn up, or if you should

02:00:33 25 violate any of the terms of supervised release, a bench

02:00:37 1   warrant could issue for your immediate arrest and you

02:00:40 2   could be prosecuted for a separate federal felony we

02:00:44 3   sometimes call bail jumping, and if you are convicted

02:00:48 4   of that crime, you'll be looking at significant

02:00:51 5   additional time in prison and fine all of which would

02:00:54 6   be on top of, consecutive to, the sentence that I've

02:00:58 7   just imposed today and you would also forfeit the

02:01:01 8   amount of any bond; do you understand all of that?

02:01:03 9         THE DEFENDANT:  Yes.

02:01:04 10        THE COURT:  Now, do you agree to turn up at

02:01:06 11   the time and place designated?

02:01:08 12        THE DEFENDANT:  Yes.

02:01:08 13        THE COURT:  Very well then.  The defendant

02:01:09 14   shall surrender for service of sentence at the

02:01:12 15   institution designated by the Bureau of Prisons before

02:01:16 16   2:00 PM on January 2, 2009.

02:01:20 17     I think I've already said this, but I do recommend

02:01:23 18   that the Bureau of Prisons assign him to the federal

02:01:26 19   camp at Sheridan, Oregon.

02:01:29 20     Is there anything further at this time from the

02:01:31 21   Government, Mr. Chapman?

02:01:31 22        MR CHAPMAN:  No, Your Honor.

02:01:32 23        THE COURT:  From the defense, Mr. McCloskey?

02:01:34 24        MR. MCCLOSKEY: No, Your Honor.

02:01:35 25        THE COURT:  Thank you counsel.  We will stand

02:01:36   1    in recess.

02:01:37   2              (END OF PROCEEDING)

           3              **C E R T I F I C A T I O N**

           4    I, Dennis R. Ford, Registered Merit Reporter and

           5    Official Court Reporter for the United States District

           6    Court, District of Maine, certify that the foregoing is

           7    a correct transcript from the record of proceedings in

           8    the above-entitled matter.

           9    Dated:  January 28, 2009

          10              /s/ Dennis R. Ford

          11              Official Court Reporter

          12

          13

          14

          15

          16

          17

          18

          19

          20

          21

          22

          23

          24

          25